BARNES, J., for the Court:
¶ 1. Patrick Coleman was convicted of murder and sentenced to life in prison. Coleman raises two issues on appeal: (1) whether the trial court erred by failing to hold a hearing to determine if he was competent to stand trial and (2) whether his trial counsel was ineffective. Because under Uniform Rule of Circuit and County Court 9.06 Coleman was entitled to a hearing to determine his competency to stand trial, we ordered the trial court perform a nunc pro tunc, or retrospective, competency hearing. After the hearing, the trial court found Coleman was competent to stand trial. Finding no reversible error, we affirm Coleman’s conviction and sentence.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On the afternoon of November 28, 2007, Kimberly Watts, Caarda Turner, Trevoris Griffin, and the victim, Frederick Pruitt, were socializing at Watts’s apartment in Meridian, Mississippi, when Pruitt suddenly got up, opened the door to Watts’s apartment, looked out, and then ran into Watts’s bedroom. Watts opened her apartment door and saw two armed men coming toward her apartment. One of the men was Coleman, who lived with his family across the street. Believing that Pruitt had been disrespectful to his wife earlier that morning, Coleman demanded Pruitt to exit the apartment. Watts testified that after repeating the demand, Coleman entered her apartment against her wishes and shot twice at Pruitt. The second shot hit Pruitt in the forehead, killing him. Coleman then told Watts to call the police, while he waited outside.
¶ 3. Coleman was taken into custody, waived his rights, and gave a voluntary statement admitting that he had shot at Pruitt twice. In the statement, Coleman also stated he would have shot himself as well had his nephew not taken the firearm away from him. Coleman was indicted for deliberate-design murder or the lesser crime of manslaughter.
¶ 4. On November 24, 2008, defense counsel filed a “Motion for Psychiatric Examination and/or Treatment” for Coleman, which the trial court granted. The order stated the purpose of the mental evaluation was (1) to determine whether or not Coleman had “a factual as well as rational understanding of the nature and object of the legal proceedings against him, and has the ability reasonably to assist his attorney in the preparation of his defense,” and (2) “to describe Coleman’s mental state at the time of the alleged offense(s) with respect to his ability to know the difference between right and wrong ... at that time.” Defense counsel requested and was granted several continuances of Coleman’s trial, in part because Coleman had not been psychologically evaluated. In the trial court’s March 2009 order, a final continuance was granted, but the court added a handwritten note at the end of the order stating: “This case is set for trial June 1, 2009. Failure of defense counsel to appear *238 at 9:00 a.m. on trial date will be considered by the court as direct criminal contempt.”
¶ 5. On April 1, 2009, Coleman’s psychological evaluation was performed at Whitfield. A summary report on Coleman’s evaluation, dated May 12, 2009, was filed with the trial court on May 18, 2009. The report was signed by two psychologists and a psychiatrist. The evaluators reviewed Coleman’s police record, past psychiatric records at various hospitals, school records, and information from the jail staff where he was incarcerated. Coleman’s attorney was also interviewed. Coleman himself was interviewed for two hours by the evaluators and went through two hours of psychological testing. The report noted Coleman’s extensive history of serious psychiatric illness, including schizophrenia, depression, and intermittent explosive disorder. Also noted were his previous diagnoses for personality disorder, as well as alcohol and cannabis abuse disorders. However, the report concluded that Coleman was competent to stand trial, finding he “had the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding in the preparation of his defense, and that he had a rational as well as factual understanding of the nature and object of the legal proceedings against him.” The report also stated that, while Coleman “may have been experiencing symptoms of his mental illness on the day of the alleged offense, there was no information to suggest that the symptoms of his illness impaired his ability to know the nature, quality, or wrongfulness of his alleged acts at that time.” It was noted that during the evaluation, Coleman did not exhibit any active symptoms of psychosis or “genuine memory impairment.”
¶ 6. On the morning of June 1, 2009, Coleman’s counsel appeared in court late, approximately thirty minutes after Coleman’s trial was scheduled to begin. She requested a continuance, asserting that Coleman was entitled to a full competency hearing and that she needed time to subpoena witnesses who would testify as to Coleman’s competency. She also wanted to cross-examine the physician who made the mental-evaluation report on Coleman. In response, the trial judge questioned why defense counsel had waited until the morning of trial after the jury had been qualified to request a competency hearing, when the defense had received the mental-evaluation report approximately ten days prior to trial. The trial judge concluded that the issue was waived. Further, the judge noted that the summary report indicated Coleman was competent to stand trial. The trial court denied the motion for a continuance, and Coleman’s two-day trial commenced.
¶ 7. On the second morning of trial, defense counsel again raised the issue of competency. She filed a motion for a mistrial and a reinstatement of the request for a competency hearing pursuant to Uniform Rule of Circuit and County Court 9.06, but the motion was denied. Attached to the motion was an affidavit from Coleman’s wife stating that her husband “suffers from many mental problems,” and before the incident, he “had been seeing invisible people and talking to himself for over a week”; he “was out of his medication and was becoming more and more uncontrollable.” Also attached was an affidavit by defense counsel insisting that Coleman was incompetent to stand trial. In the sworn statement, defense counsel stated that she had assumed the first day of trial would be a “general setting” and not a “specific setting,” and “the June 2, 2009 hearing would be for a setting of the competency hearing.”
¶ 8. Defense counsel also filed a notice of insanity defense, which the trial court *239 properly denied as untimely. During Coleman’s case-in-chief, he initially decided not to testify. When examined by the court about his decision, Coleman indicated that he understood its implications, but defense counsel added that she still did not believé Coleman was competent to stand trial. Later, Coleman changed his mind and testified on his own behalf.
¶ 9. Coleman testified that on November 28, 2007, Pruitt had initiated the argument. Coleman maintained that he had not meant to shoot Pruitt with the first shot, but merely scare him. Also, Coleman thought Pruitt was reaching for a firearm; however, no firearm was found on Pruitt. Coleman maintained that he “blanked out and the gun went off [a second time], and that’s all I remember.” Pruitt was killed by this second shot.
¶ 10. The jury was instructed on deliberate-design murder. The circuit judge refused instructions on manslaughter and self-defense. The jury returned a verdict of guilty on the charge of murder, and the trial court sentenced Coleman to life in prison. In a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV), defense counsel reiterated the issue of Coleman’s competence. Defense counsel argued that the trial court violated Rule 9.06 by failing to hold an on-the-record competency hearing and make findings on the record. Further, defense counsel argued that the summary report provided to her and the court in May 2009 was inadequate for determining competency,'and the supporting clinical data, results, and reasoning were needed.
¶ 11. At the hearing on the post-trial motion, defense counsel stated that she did not have any new testimony to present to the court, but she introduced into evidence Coleman’s full mental evaluation from ■Whitfield, which Coleman’s attorney had only obtained the day before.[1] Defense counsel explained that she had not requested a competency hearing before trial because it was her understanding that once the court orders the defendant to submit to a psychiatric examination under Rule 9.06, the court must conduct a hearing. The trial court did not accept defense counsel’s reasoning and maintained that all of the information that was presented indicated Coleman was competent to stand trial. The trial court denied the motion for a new trial or JNOV. Coleman timely appealed. He is represented by a different attorney on appeal than in the trial court proceedings.
ANALYSIS
I. Competency to Stand Trial
¶ 12. Before and throughout the trial proceedings, Coleman’s counsel requested a full competency hearing several times so she could subpoena witnesses and cross-examine the physicians who made Coleman’s mental report. On appeal, Coleman argued that it was error for the trial court to fail to hold a hearing to determine whether Coleman was competent to stand trial under Rule 9.06.[2] Coleman cited
*240 Sanders v. State, 9 So.3d 1132 (Miss.2009) regarding the mandatory nature of competency hearings under Rule 9.06. Sanders held that once the trial court orders a psychological evaluation and it is completed, it is mandatory that the trial court have an on-the-record hearing on competency and make findings on the record. Id. at 1136 (¶ 16) (citing URCCC 9.06). The State responded that Sanders is distinguishable from Coleman’s case because here the trial court made a determination based on the results of a mental examination that Coleman was competent to stand trial, unlike in Sanders, where there was no such on-the-record finding of competency. See id. at 1136-37 (¶ 17). In the alternative, the State suggested that if this Court found error in the trial court’s failure to conduct a competency hearing, we could remand the case for a nunc pro tunc, or retrospective competency hearing, as sanctioned in Wheat v. Thigpen, 793 F.2d 621, 630 (5th Cir.1986) (citing United States v. Malcris, 535 F.2d 899, 904 (5th Cir.1976)), rather than reverse and remand for a new trial when Coleman is found currently competent.[3] We found the State’s suggestion appropriate under the unique circumstances of the case, as there appeared to be sufficient evidence from which to make a meaningful retrospective competency determination. Therefore, we ordered the trial court to perform a retrospective competency hearing, where the parties could call witnesses and present relevant evidence as to the issue of Coleman’s competency to stand trial in June 2009.
¶ 13. At the hearing in September 2011, Coleman did not present any evidence to support his assertion that he was incompetent to stand trial. Nor did he call any lay or expert witnesses who could testify to his behavior around the time of his trial in June 2009. In September 2011, the trial court issued an order finding Coleman was competent to stand trial in June 2009. We cannot find the trial court erred in this regard. In making this determination, the trial judge considered Coleman’s demean- or during the trial, Coleman’s decision to testify on his own behalf, his testimony, the record, and the arguments by counsel at the hearing. Because the trial court found Coleman competent to stand trial, the only issue remaining on appeal is Coleman’s ineffective assistance of counsel claim.
II. Ineffective Assistance of Counsel
¶ 14. Coleman argues that his trial counsel was ineffective. He claims she lacked preparation, a trial strategy, and a theory of defense, which was especially apparent during the issuance of jury instructions. Coleman notes the trial court refused a jury instruction on manslaughter and found one on self-defense unjustified. Further, Coleman criticizes his trial counsel for not filing a motion in limine regarding his confession to law enforcement. Coleman claims these deficiencies in performance prejudiced him, resulting in a conviction of murder.
*241 ¶ 15. “[W]hen a party raises an ineffective assistance of counsel claim on direct appeal, the proper resolution is to deny relief without prejudice to the defendant’s right to assert the same claim in a post-conviction relief proceeding.” Trotter v. State, 9 So.Sd 402, 411 (¶ 23) (Miss.Ct. App.2008) (quoting Graves v. State, 914 So.2d 788, 798 (¶ 35) (Miss.Ct.App.2005)). “This Court will reach the merits on an ineffective assistance claim only in instances where ‘(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.’ ” Id. (quoting Wileher v. State, 863 So.2d 776, 825 (¶ 171) (Miss. 2003)). We find neither of these instances present here. Further, most of Coleman’s claims of ineffective assistance involve alleged inaction by trial counsel, which requires information outside of the record. Coleman’s conviction is affirmed without prejudice to his ability to raise an ineffective assistance of counsel claim in a proceeding for post-conviction relief.
¶ 16. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUD-ERDALE COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. This detailed thirty-page report should have been in the record on appeal, but it was not. This Court subsequently obtained the report from the Lauderdale County Circuit Court. There is no indication in the record that this report was reviewed by the trial court in denying Coleman’s request for a rehearing. Coleman’s psychiatric history confirmed the claim in the affidavit of Coleman's wife that Coleman had struggled with serious mental illness for several years.

. In Mississippi state courts, Rule 9.06 governs the competency to stand trial and states, in pertinent part:
If before or during trial the court,’of its own motion or upon motion of an attorney, has reasonable ground to believe that the defen-
*240 dant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination....
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial.
If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial.
(Emphasis added).

. We note Coleman did not file a reply brief and therefore did not respond to this suggestion.